IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| vs. | ) Criminal Action No. 18-00120-KD-MU |
| | ) |
| DAVID HAROLD STOKES, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action came before the Court for a non-jury trial on May 28, 2020. Defendant David Harold Stokes, his defense counsel Andrew M. Jones, and Assistant United States Attorney Michele C. O'Brien were present at trial. After hearing the parties and consideration of the evidence, the Court requested post-trial briefs and took the matter under advisement.

Upon consideration of the argument and evidence at trial and the record, including the psychological evaluations (docs. 37, 38, 42), the parties' joint stipulation of facts (doc. 63) and their respective post-trial briefs (docs. 69, 70), and for the reasons set forth herein, the Court finds that Stokes has failed to establish an insanity defense. The Court further finds that Stokes knowingly possessed a firearm as charged in Count One, that he knowingly possessed a stolen firearm as charged in Count Two, and that he is guilty as charged.

Accordingly, Stokes is set for sentencing on October 9, 2020 at 9:30 a.m. at Courtroom 4B of the United States Courthouse, 155 St. Joseph Street, Mobile, AL 36602 before Chief Judge Kristi K. DuBose. The Presentence Investigation Report shall be due on September 4, 2020. On or before September 25, 2020, the parties shall each file a Position with Respect to Sentencing Factors in accordance with Criminal Local Rule 32(B)(4). In the event that the parties choose to file a Sentencing Memorandum, it shall be due seven (7) days prior to the date of sentencing. In

the event that the parties decide to file a Motion to Continue Sentencing, the motion shall be due four (4) days prior to the date of sentencing.

The United States Marshal is directed to produce Stokes for sentencing.

I. <u>Factual and Procedural History</u>

Stokes was indicted for the offense of possession of a firearm by a convicted felon (Count One) in violation of 18 U.S.C. § 922(g) and possession of a stolen firearm in violation of 18 U.S.C. § 922(j) (Count Two) (doc. 1). The conduct underlying Stokes' indictment occurred on May 4, 2018.

After arraignment, Stokes' motion for psychological evaluations pursuant to 18 U.S.C. §§ 4241 and 4242 was granted (doc. 19). Stokes was evaluated at the Federal Medical Center at Butner, North Carolina by Forensic Psychologist Dr. Miriam Kissin, Psy.D., for the period of time between August and October 2018. (docs. 37, 38).

With respect to competency to proceed, Dr. Kissin offered her opinion that "Stokes's competency-related skills are significantly compromised by presently exacerbated symptoms of a serious mental illness or defect, namely Delusional Disorder, such that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense" (doc. 37, p. 11). She explained that a "sustained period of treatment with an optimal level of antipsychotic medications would be necessary in order for Mr. Stokes to achieve a sufficient level of psychiatric symptom reduction, so as to permit his legal case to proceed." (Id., p. 11-12). She recommended commitment for further evaluation and treatment for restoration to competency. (Id.). In the Clinical Formulation section of her report, Dr. Kissin found as follows:

> There is no indication Mr. Stokes manifested any previous significant psychiatric symptoms, other than his long-standing substance use. And as such, it is probable Mr. Stokes's psychotic symptoms may have been triggered in the context of methamphetamine and alcohol use. However, his delusional beliefs appear to

> have persisted, despite having been away from substances for over six months. As such, a diagnosis of Delusional Disorder, rather than Substance-Induced Psychotic Disorder is the most fitting diagnosis to account for Mr. Stokes's **current** clinical presentation.

(Doc. 37, p. 8). Dr. Kissin gave a primary diagnosis of "Delusional Disorder, mixed Grandiose and Persecutory types" and secondary diagnosis of "Alcohol Use Disorder, In a Controlled Setting; Stimulant Use Disorder (Methamphetamine), in a Controlled Setting". (Id., p. 8).

With respect to Stokes' mental state at the time of the offense, Dr. Kissin found as follows:

> The criteria for legal insanity are identified in Title 18, U.S. Code, Section 17. It states, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defects, was unable to appreciate the nature and quality or the wrongfulness of his acts.
>
> Mr. Stokes's history is consistent for a psychotic illness, namely Delusional Disorder. Although he has no documented or reported history of mental illness, it appears Mr. Stokes had developed delusional ideas within the last few years. **These psychotic symptoms were likely triggered by methamphetamine use** but have remained active despite abstinence from drugs for over six months. Mr. Stokes had reportedly been using methamphetamine in the time leading up to the instant offense behavior. However, his delusional ideas appear to have developed independently in scope and intensity in the weeks preceding the offense, as evidenced by his continued delusional beliefs to date about the transpiring events. Mr. Stokes described a chain of events, which was clearly fueled by paranoid persecutory and religious delusions. He came to believe his life was in danger, and perceived confirmation of his beliefs all around him, presumably in the form of "signs" from God. He came to believe he was being spied on, and that an ever growing matrix of individuals wished to kill him in order to silence him about their involvement in illegal activities, Mr. Stokes's fear eventually became so great, that he followed an extreme course of actions with the intent to elude enemies he perceived to be pursuing him at every turn. Mr. Stokes described fearing for his life, and his actions, including wandering around a swamp to evade his would-be killers and running away from paramedics and police officers he feared were in cahoots with them certainly speaks to the extreme level of fear he was experiencing. Mr. Stokes described having been aware that as a convicted felon, he was not allowed to possess a

> gun, but took it anyway, as he feared for his life. Given the robust delusional system and significant level of fear under which he had been operating at the time of the instant offense, it appears psychotic symptoms were fundamentally driving Mr. Stokes's behaviors. At the time of the offense Mr. Stokes was apparently aware his actions regarding stealing a gun constituted an illegal act. However, the weight of his delusional thinking, driven by a fear for his life, predominated, and rendered his decision-making greatly compromised and ineffective.
>
> In conclusion, it is the opinion of the undersigned that at the time of the instant offense, Mr. Stokes manifested symptoms of a severe mental disorder, namely Delusional Disorder, which rendered him unable to appreciate the nature and quality or the wrongfulness of his acts.

(Doc. 38, p. 5-6) (emphasis added).

On February 8, 2019, the Court held a competency hearing pursuant to 18 U.S.C. § 4247(d). Stokes, his defense counsel and the Assistant United States Attorney were present for the hearing. Dr. Kissin's opinion in her Forensic Report regarding competency to proceed was the only evidence presented. The Court found by a preponderance of the evidence that Stokes was "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d) (doc. 39). He was committed to the custody of the Attorney General for hospitalization for a reasonable period of time, not to exceed four months, to determine whether he would attain capacity for the proceedings to go forward (Id.).

Stokes was evaluated by Dr. Evan S. DuBois Psy.D., during the period between May 2019 and September 2019 (doc. 42). Dr. DuBois diagnosed Stokes with "Methamphetamine-induced psychotic disorder, with onset during intoxication; Methamphetamine use disorder, in a controlled environment" and "Alcohol use disorder, in a controlled environment." (Id., p. 7). Dr. DuBois stated as follows:

> Mr. Stokes was previously diagnosed with delusional disorder, mixed

4

grandiose and persecutory type by Dr. Kissin in December 2018. He was noted to exhibit paranoid delusional beliefs as well as grandiose delusions regarding his having a special relationship with God and experiencing communications from God as a result. At the onset of this evaluation period these symptoms had decreased significantly and no longer appear to significantly impact his functioning or ability to communicate in a rational manner. Mr. Stokes has demonstrated this improvement without taking any psychiatric medication. Based on the improvement in Mr. Stokes' symptoms over an extended period of time and the apparent onset of his symptoms, **it is believed his symptoms are most consistent with a substance-induced psychotic disorder, in full remission. Specifically, Mr. Stokes' symptoms were likely brought on by the use of methamphetamine** and persisted well beyond his discontinuing the use of substances. The symptoms were likely exacerbated by external stressors or may have been extended due to them, including his incarceration. At this time, symptoms do not appear present and/or to be interfering with his overall functioning, therefore the specifier of in full remission, is provided.

Consistent with the prior evaluations, Mr. Stokes reported a significant history of alcohol and methamphetamine use. Mr. Stokes was somewhat guarded with regard to his use pattern and associated symptoms, though he acknowledged his use of both substances led to impairments in interpersonal and occupational functioning, tolerance, and inability to discontinue use. Due to the lack of specific information regarding the totality of impacts to his functioning, the severity of his use was not specified. A specifier of *in a controlled environment* was provided. Although Mr. Stokes has reported a desire to discontinue substance use upon release, it is likely his current remission from use is largely due to being in an environment where access to such substances is strongly restricted.

Mr. Stokes' prognosis is considered fair. While there are previous reports suggestive of a severe mental illness, the majority of the symptoms were not observed during the course of this hospitalization. He has demonstrated an ability to adjust adequately to the institutional environment and has not experienced any difficulty in learning or applying information provided to him. Mr. Stokes should refrain from substance use and routine monitoring of his sobriety, as well as formal substance abuse treatment, would be beneficial.

(Doc. 42, p. 7-8) (italics in original) (emphasis added).

In summary, Dr. DuBois opined that Stokes was "not currently suffering from a mental

disease or defect which renders him incompetent to stand trial" and that he "appears to have an adequate factual and rational understanding of the proceedings against him, as well as an ability to assist in his defense." (Id., p. 8-9).  He also opined that "[w]hile there is some suggestion of prior symptoms of a mental illness, it appears these were likely caused by substance use and have decreased substantially over time." (Id.).  Dr. DuBois found "Mr. Stokes' mental status is stable without suicidal or homicidal ideation. . . . At the time this report was completed Mr. Stokes was not prescribed any psychiatric medication." (Id., p. 9).

On January 9, 2020, the Court held a competency hearing pursuant to 18 U.S.C. § 4247(d) (doc. 44).   Stokes, his defense counsel and the Assistant United States Attorney were present for the hearing.  Dr. DuBois' opinion regarding competency to proceed was the only evidence offered with respect to Stokes' competency.  The Court found by a preponderance of the evidence that Stokes was not "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]" (Id.).

On January 22, 2020, Stokes filed his notice of insanity defense (doc. 49).  Stokes notified the Court of his intent to assert a defense of insanity at the time of the offense and to rely upon evidence in the psychological evaluation by Dr. Kissin (doc. 50).  At the final pretrial conference, counsel advised the Magistrate Judge that they had agreed to a stipulated bench trial and the case was set for trial before the undersigned (doc. 60).  Stokes filed a waiver and consent to waive jury trial (doc. 64).

The parties filed their stipulations in anticipation of trial (doc. 63).  The parties stipulated to certain facts and agreed that same provide a factual basis to find Stokes guilty beyond a reasonable doubt of both offenses, if he is found responsible for his actions at the time of the

offense (Id., p. 2-3). The parties jointly submitted the Forensic Reports prepared by Dr. Kissin and Dr. DuBois (Id., p. 4-5). Stokes seeks a verdict of not guilty by reason of insanity. The United States has taken no position on Stokes' mental state at the time of the offense (Id., p. 5).

Trial was held May 28, 2020. The Court examined Stokes and reaffirmed his consent to trial without a jury. The Court read Stokes' recitation of the facts of the offense and he affirmed that the United States could prove those facts. The parties' joint stipulations of law and fact, Dr. Kissin's Forensic Reports and Dr. DuBois's Forensic Report, were the only evidence submitted. After consideration of the Reports, the stipulations, and Stokes' argument, the Court requested additional briefing on his insanity defense with specific reference to the decision in United States v. Knott, 894 F. 2d 1119 (9th Cir. 1990) ("[V]oluntary use of alcohol or drugs, even if they render the Defendant unable to appreciate the nature and quality of his acts, does not constitute insanity".)

II. Analysis

As stipulated by the parties, to prove a violation of 18 U.S.C. § 922(g)(1), possession of a firearm by a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year", as charged in Count One of the Indictment, the United States must prove: First, that Stokes knowingly possessed a firearm in or affecting interstate commerce, as charged; and second, that before Stokes possessed the firearm he had been knowingly convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense.

Also as stipulated by the parties, in order to prove a violation of Title 18, United States Code, Section 922(j), as charged in Count Two of the Indictment, the United States must prove: First, that Stokes knowingly possessed a firearm in or affecting interstate commerce, as charged;

and second, that Stokes knew or had reasonable cause to believe the firearm was stolen.

The parties stipulated to the following facts constituting the offense conduct:

On May 3, 2018, officers of the Satsuma, Alabama, Police Department (SPD) responded to a call for a person (Stokes) acting irregularly on Elvira Street. SPD identified Stokes who abandoned a vehicle stuck in the mud nearby. Stokes told officers he was lost and someone was trying to harm him. SPD spoke with Stokes' brother via telephone. Stokes' brother said that Stokes was from Fort Deposit, and the day before he had reported to family members that someone was after him. SPD offered to get Stokes medical attention and Emergency Medical Services (EMS) responded to the scene. During the EMS evaluation in the ambulance Stokes accused one of the EMTs of trying to kill him and pushed her into the front compartment of the ambulance. Stokes then ran from the scene. SPD returned to the scene, but Stokes was not located.

On the morning of May 4, 2018, Stokes stole a variety of items from two vehicles in Satsuma, including a Smith &. Wesson, Model SW9F, 9mm pistol, serial number PAF3014, with two spare magazines. The firearm was manufactured outside the state of Alabama, and therefore affected interstate commerce. Stokes then stole a vehicle on Highway 43 in Satsuma. Later that morning Stokes fired at a number of vehicles in traffic, including some on I-65. Individuals reported these instances to law enforcement and ultimately, Stokes pulled into a car lot on Hand Avenue in Bay Minette. As officers of the Bay Minette Police Department pulled up, Stokes exited the stolen vehicle. Stokes refused commands and was taken to the ground and handcuffed. The stolen 9mm firearm was in Stokes' waistband and the two magazines were in his shirt pocket. Stokes admitted all of this in his subsequent post-arrest, post-Miranda interview.

(Doc. 63).

Upon consideration of the foregoing, the Court finds the United States has proven beyond a reasonable doubt that Stokes committed the offenses charged in the Indictment. See United States v. McIntosh, 900 F.3d 1301, 1304 (11th Cir. 2018), cert. denied, 139 S. Ct. 926, 202 L. Ed. 2d 653 (2019) ("Because insanity is an affirmative defense, the government first had to prove that McIntosh committed the offenses in question before he could be acquitted due to a mental disease or defect.").

Stokes argues that he is not guilty by reason of a severe mental illness. Specifically, a Delusional Disorder, "which rendered him unable to appreciate the nature and quality or the wrongfulness of his acts." (doc. 69, p. 3-4).   Federal law recognizes an insanity defense. The Insanity Defense Reform Act of 1984 (IDRA) states as follows:

> (a) Affirmative defense.--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
>
> (b) Burden of proof.  The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

18 U.S.C. § 17.  To successfully assert his insanity defense, Stokes must show by clear and convincing evidence that as a result of his Delusional Disorder, he "was unable to appreciate the nature and quality or the wrongfulness of his acts." Id.

Stokes contends that he was not under the influence of methamphetamine or alcohol at the time of the offenses.  He states that he last used methamphetamine four days before the events leading to his arrest.[1] Stokes relies upon Dr. Kissin's opinion as evidence that his Delusional Disorder developed independently from his methamphetamine and alcohol use, and therefore, his past voluntary use of those substances is not an impediment to proving insanity. Stokes argues that his psychotic symptoms persisted for six months after he last used these substances. Stokes asserts that his Delusional Disorder, which caused him to believe that someone was trying to kill him, rendered him unable to appreciate the nature and quality or wrongfulness of his acts, specifically, stealing the firearm.

---

[1] There is no evidence in the record to substantiate this contention.

The Court finds that Stokes has not met his burden. The Court has considered Dr. Kissin's opinion that Stokes had no history of mental illness and Dr. Kissin also found that Stokes' "psychotic symptoms were likely triggered by methamphetamine use" even though the symptoms remained active during the evaluation period when Stokes did not have access to drugs (doc. 38, p. 5). However, Dr Kissin also opined that Stokes' delusional ideas appeared to have developed independently in scope and intensity in the weeks before the offense. (Id.) Dr. Kissin appears to have meant "independently" of methamphetamine and alcohol use. But there is no evidence to support this finding. Rather the evidence is that Stokes consistently used methamphetamine and admitted using methamphetamine four days before the offense. ("Mr. Stokes said he last used methamphetamine four days before he left his home. He said when he used it, the high would typically last three days."). Stokes even admitted to Dr. Kissin that during the offense, and in spite of his paranoia, he knew he was not allowed to possess a gun.

Moreover, although Dr. DuBois did not examine Stokes for the purpose of determining sanity at the time of the offense, he considered Stokes' earlier diagnosis of Delusional Disorder. Dr. DuBois found that the symptoms had "decreased significantly and no longer appear to significantly impact his functioning or ability to communicate in a rational manner." (doc. 42, p. 7). He also found that Stokes' improvement occurred without any psychiatric medication. (Id.). Dr. DuBois found that

> Based on the improvement in Mr. Stokes' symptoms over an extended period of time and the apparent onset of his symptoms, it is believed his symptoms are most consistent with a **substance-induced psychotic disorder**, in full remission. Specifically, Mr. Stokes' symptoms were likely brought on by the use of methamphetamine and persisted well beyond his discontinuing the use of substances. The symptoms were likely exacerbated by external stressors or may have been extended due to them, including his incarceration.

(Doc. 42, p. 7) (emphasis added).

In sum, Stokes had no documented history of mental illness. This despite an extensive criminal history over 30 years, which includes a federal conviction. Moreover, both doctors who examined him believed that his psychotic symptoms were induced by methamphetamine use. In other words, Stokes' delusional belief that his life was in danger was induced by methamphetamine use. To the extent that this delusional belief is a defense, in spite of his admission that even in his delusional state he appreciated the wrongfulness of his actions, it was initiated by his voluntary use of methamphetamine. As explained in United States v. Knott, "a mental disease or defect must be beyond the control of the defendant if it is to vitiate his responsibility for the crime committed. Insanity that is in **any par**t due to a defendant's voluntary intoxication is not beyond his control." 894 F.2d at 1122 (emphasis added).

III. Conclusion

The issue of insanity having been raised by notice as provided by Rule 12.2 of the Federal Rules of Criminal Procedure, the Court finds Defendant Stokes guilty of the offenses charged in Count One and Count Two of the Indictment. See 18 U.S.C. § 4242(b) (providing for a special verdict in the event of a nonjury trial).

DONE and ORDERED this 10th day of July 2020.

>s / Kristi K. DuBose
>KRISTI K. DuBOSE
>CHIEF UNITED STATES DISTRICT JUDGE